CHIEF EDITOR        -      -      W. J. TOSSEL
President           -      -      -      J. F. Laning
Vice Pres y Ar. Mgr.       -      Sam H. Torrey
Secretary and Treasurer    -      S. R. Laning

Issued Every Wednesday         50 Weeks of the Year

SUBSCRIPTION PRICES AND TERMS
Year (50 issues) Payable in Advance ..$15.00
Single Numbers ......................      .50
First Semi-Annual Digest, No. 36, separately   2.50
Second Semi-Annual Digest, Vol. 2, No. 2   2.50

Responses from our subscribers are to the effect that they approve the punching of binder holes in the Abstract, and hereafter each issue will be punched the same as shown in the Semi-Annual Digest of last week. The position of the holes makes the papers fit the covers we furnish, and the distances will be maintained.

We take this occasion to thank the several subscribers to the Abstract, who have sent us a complimentary letter concerning the Third Semi-Annual Digest issued last week. It reminds us of the sentiment:

If with pleasure you are viewing, anything a
        man is doing, tell it to him now, .
Don't wait till life is over, and he's underneath
        the clover,
For he cannot read his tombstone, when he's
        dead.

Considerable space in the Abstracts, for the past month, has been taken up to report the current Ohio Supreme Court Proceedings, this judiciary, according to its usual custom, just previous to recessing for its summer vacation, having decided all the cases that could be disposed of. But as the court will render no opinions, nor make decisions, until it convenes again, it will be October, when, except as to New Cases Docketed, we will be able to print more of its holdings. But there will be plenty of cases to publish, without its new issues, as there are still many Pending Cases to be written up, docketed within the last few months, not yet reached by the court, that we will give publicity, and its overruled motions to certify, brings out the necessity for our presenting many Court of Appeals unpublished decisions, that now become real authorities, because of the endorsement that logically they get through refusal of the highest court to disturb them. While neither of these two prominent courts will be functioning much during the long vacation period, with what cases we have on hand, we will be able from these and other resources, to keep our readers well supplied with summer reading.

## U. S. COURT OF APPEALS
### CLEVE. & WEST. COAL CO. v. MAIN ISLAND COAL CO.

U. S. Court of Appeals, 6th Circuit

No. 3922.    Decided March 4, 1924

465. ERROR—1. Assignment that verdict is against weight of evidence cannot be considered by appellate court.

2. Motion for directed verdict exception and assignment of error necessary to raise question of insufficiency of evidence.

3. Denial of new trial for insufficiency of evidence reviewable not for mere error but only for abuse of discretion.

4. Omission to instruct in particular matter reviewable only when called to attention of trial court by a request to charge or an exception.

903. PAYMENT—Voluntary payment not recoverable as a set off in a subsequent action between same parties.

951. PRINCIPAL AND AGENT—Testimony of principal corroborating agent as to instructions to agent held competent. ____ __

480. EVIDENCE—Exclusion of evidence not considered, in absence of offer indicating nature of evidence excluded.

MACK, C. J.

#### Epitomized Opinion

Plaintiff was owner and operator of various coal mines located in Logan county, West Virginia, and during the fall of 1920 was desirous of shipping coal to Newport News, Va., for export. The defendant was engaged in the business of buying and selling coal, and controlled the output of certain mines in Logan county, West Virginia. The C. & O. Railroad, upon the lines of which the mines of the plaintiff and defendant were located, placed embargoes from time to time on shipments of coal to tidewater from the mines located on its line. Moreover, the Interstate Commerce Commission had promulgated service order No. 10 which provided in substance that approximately 30 per cent of the total output of all coal mines in Logan county should be shipped to Lake Erie ports for transshipment by boats up the lakes. The plaintiff was desirous of getting as much coal to tidewater as possible. The defendant, on the other hand, wanted to get all the coal it could to the lake during the lake season. Consequently the parties entered into an agreement for the exchange of coal having a stipulated market value at the time of $6.00 per ton.

The plaintiff's mine output was greatly in excess of the defendant's. The plaintiff contended that the agreed price for shipment by either party was limited to the 1920 season

of lake navigation and that $6.00 per ton was the agreed price to be paid for the excess shipment. The defendant contended that the parties contemplated approximately equal shipments and that consequently defendant's shipments were not limited to the season of lake navigation, but might be made within a reasonable time thereafter, and that though $6.00 was a fair market value of coal during that season, it was not during other seasons.

As against plaintiff's claim for something over $400,000, the value of $6.00 per ton and interest of the 60,000-odd tons concededly shipped by plaintiff in excess of defendant's shipments of some 8,500 tons during the lake navigation season, defendant claimed credit for some 3100-odd tons actually shipped by it shortly thereafter and for the difference between $6.00 per ton and approximately $120,-000 received by it for the 57,000-odd tons which it alleged it had mined, shipped and sold at going market prices within a reasonable time after the close of lake navigation. It tendered, in its pleadings, some $90,000, being the balance of $119,000 conceded by it to be due plaintiff, less some $29,000, claimed by way of set-off as due from plaintiff to it on a 1919 transaction.

Plaintiff denied the set-off and contended the amount in question had been subject of a complete accord and satisfaction. A verdict was awarded for the plaintiff for the full amount claimed and nothing was allowed the defendant on its claim of set-off arising out of the 1919 transaction. In sustaining the judgment of the lower court, the United States Circuit Court held:

1. An assignment of error that the verdict is against the weight of the evidence cannot be considered by the appellate court.

2. To raise the question in the appellate court that there was no substantial evidence to support the verdict, plaintiff in error should move for directed verdict, except to the overruling of the motion, and assign error thereon.

3. Overruling of a motion for new trial, based on insufficiency of the evidence and weight of evidence, is not reviewable for mere error, but only for an abuse of discretion.

4. Failure of the court to charge with respect to a particular claim of defendant is not reviewable, unless it was called to the attention of the trial court by a request to charge or an exception.

5. Where defendant voluntarily paid the full amount due plaintiff on a settlement of accounts, without deducting a sum it might have asserted as a counterclaim, it cannot plead such overpayment as a set-off in an action between the parties on a subsequent transaction.

6. Testimony of a principal, corroborating that of his agent, as to instructions given the agent, held competent, where the agent had no authority, and was not held out as having authority, in the matter in which he acted, except as limited by such instructions.

7. Exclusion of question held not reviewable, in absence of offer indicating the nature of the evidence excluded.

Attorneys—C. F. Taplin, Cleveland, for Cleveland Coal Co.; Murray Seasongood, Cincinnati, and John H. Holt, for Main Island Co.